IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, a Pennsylvania Corporation;<br><br>Plaintiff,<br><br>vs.<br><br>FIVE STAR RESTAURANTS, LLC, a Nevada limited liability company; WESTBURY MANOR ENTERPRISES, Inc. a Delaware foreign business corporation; VINCENT SCOTTO, an individual; MICHELINA SCOTTO, an individual; DOE INDIVIDUALS 1 through 10, inclusive; ROE BUSINESS ENTITIES 11 through 20, inclusive;<br><br>Defendants. | Case No.:  2:17-cv-00871-APG-PAL<br><br>**PRELIMINARY INJUNCTION** |

Plaintiff Philadelphia Indemnity Insurance Company ("Philadelphia") moved for a Temporary Restraining Order and Preliminary Injunction restraining the defendants from selling, transferring, disposing of, or liening their assets and property and certain sale proceeds of Five Star Restaurants, LLC., until requested collateral is posted by the Indemnitors. ECF No. 5. I have reviewed the pleadings and the papers on file and considered the arguments of counsel at the March 30, 2017 hearing on the motion.

1. This Court has jurisdiction over this case, and venue is proper in this district.

2. On or about February 10, 2016, Five Star Restaurants, LLC ("Five Star") entered into a construction contract with TCD Construction to build out retail space at Tintoretto located at the Venetian Hotel & Casino, 3377 Las Vegas Blvd., Space #2085, Las Vegas, NV 89109 (the "Project"). The owner of property required Five Star to obtain a bond.

3. On or around April 12, 2016, Philadelphia issued lien release bond no. PB11772900576 (the "Bond") as surety in the amount of $1,679,277.00 in connection to the Project and for the benefit of "all prospective and existing lien claimants who have provided or hereafter provide materials, equipment or work under the prime contract, from which such the principal and surety will pay the lien claimants the lienable amount that a court of competent jurisdiction may

determine is owed to each lien claimant, and such additional amounts as may be awarded pursuant to NRS 108.237, but the liability of the surety may not exceed the penal sum of the surety bond."

4.      In consideration for the issuance of the Bond and to induce Philadelphia to issue the Bond, defendants Five Star, Westbury Manor Enterprises, Vincent Scott and Michelina Scotto (the "Indemnitors") entered into an Indemnity Agreement wherein they each agreed, jointly and severally, as follows:

> **3. INDEMNITY** - Indemnitors agree to indemnify and hold harmless Surety from and against any Loss sustained or incurred: (a) by reason of having executed or being requested to execute any and all Bonds; (by failure of Indemnitors or Principals to perform or comply with any of the covenants or conditions of this Agreement or any other agreement. The Indemnitors' obligation to indemnify the Surety shall also apply to any Bond renewals, continuations or substitutes therefore. In the event of payments by Surety, Indemnitors agree to accept vouchers, a sworn itemization, or other evidence of such payments as prima facie evidence of the fact and extent of the liability of Indemnitors to Surety in any demand, claim or suit by Surety against Indemnitors. . . .

5.      The Indemnitors further agreed to provide collateral security upon Philadelphia's demand:

> **4. POSTING OF COLLATERAL** – Indemnitors agree to deposit immediately upon demand by Surety an amount equal to the greater of: (a) the amount of any reserve established by Surety in its sole direction to cover any actual or potential liability for any Loss or potential Loss for which Indemnitors would be obliged to indemnity Surety hereunder; or (b) the amount of any Loss or potential Loss (including legal, professional, consulting, and expert fees and expenses) in relation to any claim or claims or other liabilities asserted against Surety as a result of issuing any Bond, as determined by the Surety in its sole discretion. . . .

6.      The Indemnitors also agreed to provide documentation and information to Philadelphia:

> **11. ACCESS TO BOOKS & RECORDS** – Surety, including its designated agents, shall, at any and all times, have unrestricted access upon reasonable notice to review all books and records of Principal and Indemnitors, including all books and records pertaining to their financial condition, and to the status of each unbonded and Bonded Contract. Principal and Indemnitors agree to provide updated financial statements upon the Surety's request. Principal and Indemnitors hereby authorize those with whom such Bonded Contracts are made to furnish to Surety all information such contracts and the work thereunder. Principal and Indemnitors also hereby authorize any bank, financial or lending

institution, or depository to provide Surety with access to bank statements or financial records or any other information or documents requested by Surety.

7. The Principal and Indemnitors also agreed to obtain written consent from Philadelphia prior to any changes in status/transfer of assets outside the ordinary course of business or that shielded any Indemnitor from liability:

> **15. EFFECT OF CHANGE IN STATUS/TRANSFER OF ASSETS** – Each Principal and Indemnitor agrees not to change or convert its respective individual, corporate or partnership status to the extent such change has the effect of limiting, reducing or shielding the liability of either the entity or its partners and/or officers hereunder, without the prior, express, written consent of Surety. Should any Principal or Indemnitor so change its respective corporate or partnership status without the prior, express, written consent of Surety, Principal or Indemnitor agrees that such change in its status shall not limit, reduce or otherwise shield its obligations, its partners' and/or officers' obligations, to Surety which arise from this Agreement. The Principal and Indemnitors hereby expressly waive as against Surety any and all defenses which may arise from such a conversion to a LLC, LLP or similar status. Principal and Indemnitors acknowledge that the Surety relies upon the assets reflected in their financial statements in the issuance of Bonds, and **agree not to dispose of or transfer said assets, except in the ordinary course of business, without the prior, express, written consent of Surety**. (emphasis added).

8. Commencing September 14, 2016, Philadelphia began receiving claims on the Bond. As of March 24, 2017, those claims are as follow:

| Claimant | Amount |
| --- | --- |
| Advantage Electric | $ 140,670.18 |
| QED (subcontractor to Advantage Electric) | $ 38,085.15 |
| Cutting Edge Cabinets | $ 59,549.28 |
| Desert Eagle Flooring | $ 22,463.50 |
| Diamond Eagle Flooring | $ 17,945.00 |
| Southern Nevada Welding | $ 23,607.60 |
| Steel Concepts (subcontractor to Southern Nevada Welding) | $ 12,780.00 |
| Statewide Fire Protection | $ 6,836.73 |
| Woodwork's Construction | $ 9,818.45 |
| Moser Architecture Studio | $ 14,500.00 |
| TCD | $ 646,612.60 |
| **TOTAL** | **$ 992,868.49** |

9.   In light of these claims and in exercise of Indemnity Agreement rights, on December 21, 2016, Philadelphia demanded that the Indemnitors post collateral security in the amount of $332,637.23.

10.  On December 29, 2016, counsel for Five Star, Becky Pintar, advised "The collateral demand is not possible at this time due to the issues with the litigation, the lease and the landlord."

11.  On February 22, 2017, Ms. Pintar advised Philadelphia that "Five Star is in the process of selling restaurants, with the sale to close by the end of March."

12.  Philadelphia requested documents and information regarding the sale, including the closing date and who was handling the sale, but the Indemnitors have failed to provide the information requested.

13.  On or about March 9, 2017, Philadelphia retained counsel who sent demand to the Indemnitors to either pay the claimants or provide detailed and specific information with supporting documentation as to Five Star's specific defenses to each claim by March 15, 2017.

14.  Philadelphia received no response from Five Star's counsel to the March 9 demand.

15.  On March 16, 2017, attorney Kurt Faux, counsel for Philadelphia, called Ms. Pintar to inquire regarding the demanded collateral and information. Faux was informed that collateral would not be posted and that the closing for the sale of Five Star was continued to April 15, 2017. Faux was also informed that there was no guaranty that Five Star would use sale proceeds to resolve the claims against the Bond.

16.  Five Star has been notified of these demands, concerns, and potential legal action by the contacts described above.

17.  On March 24, 2017, counsel for Philadelphia sent a demand letter to Westbury Manor Enterprises, Vincent Scott, and Michelina Scotto demanding the posting of collateral security in the amount of $1,027,868.49. A copy of that demand was sent to Five Star's counsel.

18.  To date, the Indemnitors have failed to provide the collateral security demanded by Philadelphia, have failed to provide the requested information regarding the sale, and have failed to pay the claimants.

19. The Indemnitors were served with a copy of Philadelphia's complaint, motion, and my order on March 27, 2017. ECF No. 8.

20. At the March 30, 2017 hearing on Philadelphia's motion, a representative of Five Star confirmed that Five Star is under contract to sell one of its restaurants (Pizzeria de Enzo), is attempting to sell another of its restaurants (Zeffirino's), and has closed its third restaurant (Tintoretto).

21. Absent the Indemnitors being enjoined as described in this order, Philadelphia will be irreparably harmed as it likely will lose its bargained-for rights (i) to be collateralized, (ii) to written consent prior to the Indemnitors' transfer or disposal of assets, (iii) to meaningful review of Indemnitors' books and records, and (iv) to equitable entitlements under the doctrine of *quia timet*.

22. Philadelphia has a likelihood of success on the merits of its claims. The balance of hardships tips in favor of Philadelphia. And the public interest is served by entering an injunction enforcing and protecting Philadelphia's contract rights.

23. Based upon the foregoing and the reasons stated on the record during the March 30, 2017 injunction hearing, good cause exists to enter the following injunctive relief:

**IT IS HEREBY ORDERED** that the Indemnitors specifically perform their contractual obligations by posting cash collateral security with Philadelphia in the following amounts: (1) $165,000.00 by 5:00 p.m. PDT on April 10, 2017, and (2) an additional $862,869.00 (for a total collateral security amount of $1,027,869.00) by 5:00 p.m. on May 1, 2017. The parties shall confer to determine whether the collateral security amount can be reduced based upon double-counting or "nesting" of lien amounts among the subcontractors and TCD.

**IT IS FURTHER ORDERED** that the Indemnitors are to provide Philadelphia immediate access to their books and records, including all financial information, particularly any and all information related to the sale of Five Star's assets.

**IT IS FURTHER ORDERED** that the Indemnitors are to obtain written consent from Philadelphia prior to transferring or disposing of any assets.

**IT IS FURTHER ORDERED** that the Indemnitors and all persons in active concert or participation with the Indemnitors, except as set forth herein, are prohibited, enjoined, restrained and precluded from selling, transferring, pledging, disposing of, or liening their assets, personal property, and real property until the full amount of the ordered cash collateral is posted by the Indemnitors

with Philadelphia or otherwise ordered by this Court.  This Order does not preclude the sale of Five Star or its assets, but the proceeds of any such sale are subject to this Order and are to be deposited with Philadelphia (up to the full amount of the cash collateral security ordered above) until further order of this Court.

**IT IS FURTHER ORDERED** that, pursuant to Federal Rule of Civil Procedure (65)(c), Philadelphia shall post security in the amount of $1,500.00 to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.

DATED: March 31, 2017, *nunc pro tunc* to March 30, 2017 at 10:35 a.m.

_____
Andrew P. Gordon
UNITED STATES DISTRICT COURT JUDGE