UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

PHILADELPHIA INDEMNITY
INSURANCE COMPANY,

Plaintiff

v.

FIVE STAR RESTAURANTS, LLC, et al,

Defendants

Case No.: 2:17-cv-00871-APG-BNW

**Order Granting in Part Motion for Summary Judgment**

[ECF No. 95]

Plaintiff Philadelphia Indemnity Insurance Company moves for summary judgment, requesting an order that defendants Five Star Restaurants, LLC, Westbury Manor Enterprises, Inc., Vincent Scotto, and Michelina Scotto (collectively, "Defendants") are bound by the terms of the Indemnity Agreement they executed and are liable to Philadelphia for all losses it incurred in connection with that Agreement. ECF No. 95. The Defendants tacitly admit liability but oppose the amount of damages Philadelphia requests.

The Defendants are bound by the terms of the Indemnity Agreement, but Philadelphia's fee request is too high. I will grant the motion for summary judgment in part and award a lesser amount.

**FACTUAL BACKGROUND**

The parties are familiar with the facts and procedural posture of this case so I will not repeat them here except as necessary for context. In 2016, defendant Five Star entered into a construction contract with Thomas Construction & Development, LLC, d/b/a TCD Construction ("TCD") to build out retail space at a restaurant called Tintoretto located at the Venetian Hotel & Casino. The Venetian required Five Star to obtain a bond before construction could commence.

In connection with issuing the Bond, Philadelphia required the Defendants to execute the Indemnity Agreement. ECF No. 6-2. The Defendants promised (among other things) to hold harmless, indemnify, reimburse, and protect Philadelphia from all losses, and to provide collateral security to cover any claims. Starting in September 2016, Philadelphia began receiving claims on the Bond. Ultimately, at least three lawsuits (the "TCD lawsuit," the "QED lawsuit," and the "Moser lawsuit") were filed in Nevada state court against Philadelphia seeking recovery under the Bond. Philadelphia demanded the Defendants put up collateral as required by the Indemnity Agreement. The Defendants refused so Philadelphia filed this lawsuit to enforce the Indemnity Agreement.

Philadelphia now seeks summary judgment confirming the Defendants' obligations under the Indemnity Agreement. Specifically, Philadelphia seeks an order that the Defendants are jointly and severally liable to indemnify and hold Philadelphia harmless from all losses incurred:

1. by its issuance of the Bond, including fees and costs incurred in the TCD lawsuit, QED lawsuit, and the Moser lawsuit;
2. to enforce the terms of the Indemnity Agreement, including fees and costs incurred in the TCD lawsuit, QED lawsuit, and the Moser lawsuit; and
3. to enforce the terms of the Indemnity Agreement, including fees and costs incurred in this lawsuit.

Although the motion initially requested judgment only "as to liability," the parties supplemented their briefs to address Philadelphia's damages, in order to resolve this case more efficiently. Thus, Philadelphia seeks an order of liability and an award of damages.

/ / / /

/ / / /

## ANALYSIS

### Liability under the Indemnity Agreement

The plain language of the Indemnity Agreement renders the Defendants liable to indemnify Philadelphia and hold it harmless from any losses incurred in connection with the Bond or the Indemnity Agreement. *See* ECF No. 6-2 at 4, § 3. This includes attorneys' fees and costs incurred by Philadelphia in this case. *Id.* at 3, § 1(h). The Defendants admit they executed the Indemnity Agreement (ECF No. 95-1 at 8), and they do not contend that it is vague or unenforceable for any reason. Again, they tacitly admit liability. Thus, the Defendants are bound by and liable under the terms of the Indemnity Agreement.

### Damages

The Defendants have breached the Indemnity Agreement by, among other things, refusing to pay Philadelphia the losses it has incurred as a result of executing the Bond. I have previously ordered the Defendants to post collateral security for some of those losses. Philadelphia now seeks to recover the remaining fees and costs it incurred as a result of the Defendants' breach.

With regard to awarding attorneys' fees under an indemnity agreement, the Supreme Court of Nevada has "adopt[ed] a standard under which courts should consider only whether the attorney's fees were incurred in good faith as a result of or in consequence of the issuance of a bond." *Transamerica Premier Ins. Co. v. Nelson*, 878 P.2d 314, 317 (Nev. 1994). The *Transamerica* court cited with approval a decision from this district court holding that "the burden is on the indemnitor to show that the action of the surety . . . was not reasonable, or was in bad faith." *Id.* (citing *U.S. v. D Bar D Enterprises Inc.*, 772 F.Supp. 1167, 1173 (Nev. 1991)). Thus, in determining the amount to award Philadelphia, I must determine not only whether the

fees and costs were incurred in good faith but also whether they are reasonable. To do otherwise would turn the Indemnity Agreement into a "blank check" that would expose the Defendants to potentially unlimited damages. *Jackson v. Hollowell*, 685 F.2d 961, 966 (5th Cir. 1982).

Philadelphia requests fees in the amount of $169,823.50 and costs in the amount of $5,259.16, for a total award of $175,132.16. ECF No. 109 at 3. The Defendants contend that Philadelphia's counsel over-billed for much of its work and undertook work in bad faith. They argue Philadelphia's award should be much lower than requested.

The Defendants concede that the rates charged by Philadelphia's counsel are low for this market. I agree. I also agree that some of the time billed by Philadelphia's counsel was greater than would be expected for the tasks described in the billing statements. Without pointing out every instance, I note by way of example that on May 18, 2017, Jordan Faux charged 0.3 hours to review very brief court minutes of a hearing he attended a few days before. *See* ECF No. 108 at 18. Similarly, he charged 0.2 hours to review a very short minute order rescheduling a hearing. *Id.*[1] The billing statements contain several similar examples. While the amount of time for each individual entry is not significant, the cumulative effect of each instance of billing for too much time is an unnecessary increase in the amount that the Defendants must reimburse to Philadelphia. I will reduce the requested amount to account for the unnecessary time entries.

The Defendants also contend that Philadelphia litigated this case too aggressively and not in good faith. I disagree. Philadelphia was entitled to protect itself and its rights under the Indemnity Agreement. Given the number of related lawsuits and the legitimate fear that the Defendants would not have sufficient assets to pay their obligations under the Indemnity

---

[1] I do not believe or suggest Mr. Faux's billing entries were made in bad faith or for improper reasons. Rather, it likely reflects inefficiency.

4

Agreement, Philadelphia's litigation tactics were not unreasonable, even if somewhat aggressive. I do not find that Philadelphia's counsel acted in bad faith.

The Defendants object to some of the work performed by paralegals. ECF No. 108 at 22. I will reduce the requested amount by $350 to account for work that could have been performed by non-billing staff.

The Defendants point out that Philadelphia is requesting $7,462.50 in fees that it previously was awarded. *See* ECF No. 108 at 31:1-11. I will discount that amount from the award Philadelphia seeks.

I have reviewed the Defendants' other objections to Philadelphia's counsel's billing statements and see no need for further reductions. I will award Philadelphia $150,000 in attorneys' fees and $5,259.16 in costs, for a total of $155,259.16, as its remaining losses recoverable under the Indemnity Agreement.

Finally, I have checked my award against the factors set forth in *Brunzell v. Golden Gate National Bank*, 455 P.2d 31, 33 (Nev. 1969),[2] *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975),[3] and Local Rule 54-14(b). Philadelphia's lawyers are appropriately skilled and

---

[2] Those factors are "(1) the qualities of the advocate: his ability, his training, education, experience, professional standing and skill; (2) the character of the work to be done: its difficulty, its intricacy, its importance, time and skill required, the responsibility imposed and the prominence and character of the parties where they affect the importance of the litigation; (3) the work actually performed by the lawyer: the skill, time and attention given to the work; (4) the result: whether the attorney was successful and what benefits were derived." 455 P.2d at 33 (citation omitted).

[3] Those factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Carter v Caleb Brett LLC*, 757 F.3d 866, 869 (9th Cir. 2014) (quotation omitted).

5

experienced to handle this case. The tasks performed were, except for the amounts I discounted, appropriate to the demands of the case. And the successful results during this case confirm the lawyers' efforts. The *Brunzell* and *Kerr* factors confirm the amounts I have decided to award.

**CONCLUSION**

I THEREFORE ORDER that plaintiff Philadelphia Indemnity Insurance Company's motion for summary judgment **(ECF No. 95) is GRANTED IN PART**. Defendants Five Star Restaurants, LLC, Westbury Manor Enterprises, Inc., Vincent Scotto, and Michelina Scotto (collectively, "Defendants") are jointly and severally liable to indemnify and hold Philadelphia harmless from all losses incurred:

1. by reason of Philadelphia executing Bond No. PB11772900576, including all reasonable attorneys' fees and costs incurred in good faith in the "TCD lawsuit," the "QED lawsuit," and the "Moser lawsuit";

2. to enforce the terms of the Indemnity Agreement, including all reasonable attorneys' fees and costs incurred in good faith due to the Defendants' failure to perform their obligation sunder the Indemnity Agreement, including fees and costs incurred in the "TCD lawsuit," the "QED lawsuit," and the "Moser lawsuit"; and

3. to enforce the terms of the Indemnity Agreement, including all reasonable attorneys' fees and costs incurred in good faith in this lawsuit.

I FURTHER ORDER that Philadelphia is awarded against the Defendants, jointly and severally, $150,000 in attorneys' fees and $5,259.16 in costs, **for a total of award of $155,259.16,** as its damages incurred as a result of the Defendants' failure to perform their obligations under the Indemnity Agreement.

/ / / /

I FURTHER ORDER the clerk of the court to enter judgment accordingly.

DATED this 30th day of September, 2019.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE